**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

MICHAL ZACZKIEWICZ,

    Plaintiff,

v.

MAXAR TECHNOLOGIES, INC.,
DANIEL L. JABLONSKY,
HOWELL M. ESTES,
NICK S. CYPRUS,
ROXANNE DECYK,
JOANNE O. ISHAM,
C. ROBERT KEHLER,
L. ROGER MASON JR.
ERIC J. ZAHLER,
EDDY ZERVIGON,
GILMAN LOUIE,
HEATHER WILSON,

    Defendants.

**COMPLAINT AND JURY DEMAND
FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**

Plaintiff, Michal Zaczkiewicz ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1. Plaintiff brings this stockholder action against Maxar Technologies, Inc. ("Maxar" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,", collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Advent International ("Ultimate Parent") through merger vehicles Galileo Parent, Inc. ("Parent") and Galileo Bidco, Inc. ("Merger Sub") and Galileo Topco, Inc. ("Preferred Equity Issuer". collectively with Ultimate Parent, Parent, and Merger Sub, "Advent") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a December 16, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").

3. Under the terms of the Merger Agreement, Advent will acquire all of the remaining outstanding shares of Maxar's common stock at a price of $53.00 per share in cash. As a result, Maxar will become an indirect wholly-owned subsidiary of Advent.

4. On January 31, 2023, Maxar filed a Preliminary Proxy Statement on Form PREM14A with the SEC in support of the Proposed Transaction (the "Preliminary Proxy Statement").

5. Defendants caused to be filed the materially deficient Preliminary Proxy Statement depriving Plaintiff of the proper information necessary to decide whether to vote in favor of the Proposed Transaction.

6. The Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Maxar, provided by Maxar management to the Board and the Board's financial advisor J.P. Morgan Securities, L.L.C. ("J.P. Morgan") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by J.P. Morgan, if any, and provide to the Company and the Board.

7. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff

## PARTIES

8. Plaintiff is a citizen of Canada and, at all times relevant hereto, has been a Maxar stockholder.

9. Defendant Maxar provides earth intelligence and space infrastructure solutions in the United States, Asia, South America, Europe, the Middle East, Australia, Canada, and internationally. Maxar is incorporated under the laws of the State of Delaware and has its principal place of business at 1300 W. 120th Avenue, Westminster, Colorado.  Shares of Maxar common stock are traded on the New York Stock Exchange under the symbol "MAXR".

10. Defendant Daniel L. Jablonsky ("Jablonsky") has been a Director of the Company at all relevant times and serves as the Company's President and Chief Executive Officer ("CEO").

11. Defendant Howell M. Estes ("Estes") has been a director of the Company at all relevant times and serves as the Chair of the Company Board.

12. Defendant Nick S. Cyprus ("Cyprus") has been a director of the Company at all relevant times.

13. Defendant Roxanne Decyk ("Decyk") has been a director of the Company at all relevant times.

14. Defendant Joanne O. Isham ("Isham") has been a director of the Company at all relevant times.

15. Defendant C. Robert Kehler Jr. ("Kehler") has been a director of the Company at all relevant times.

16. Defendant L. Roger Mason ("Mason") has been a director of the Company at all relevant times.

17. Defendant Eric J. Zahler ("Zahler") has been a director of the Company at all relevant times.

18. Defendant Eddy Zervigon ("Zervigon") has been a director of the Company at all relevant times.

19. Defendant Gilman Louie ("Louie") has been a director of the Company at all relevant times.

20. Defendant Heather Wilson ("Wilson") has been a director of the Company at all relevant times.

21. Defendants identified in ¶¶ 10 - 20 are collectively referred to as the "Individual Defendants."

## JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

3

violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

23. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, have extensive contacts within this District; for example, the Company maintains its Principal Offices in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

25. Maxar provides earth intelligence and space infrastructure solutions in the United States, Asia, South America, Europe, the Middle East, Australia, Canada, and internationally. Maxar Technologies Inc. was founded in 1957 and is headquartered in Westminster, Colorado.

26. The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance.  For example, in the November 3, 2022 Earnings Call announcing its 2022 Q3, the Company highlighted such milestones as consolidated revenues of $436 million and operating cash flows of $191 million.

27. Based upon these positive results and outlook, the Company is likely to have future success.

28.     Despite this upward trajectory, the Individual Defendants have caused Maxar to enter into the Proposed Transaction without providing requisite information to Maxar stockholders such as Plaintiff.

*The Proposed Transaction*

29.     On December 22, 2022, Maxar and Concentrix issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **Westminster, CO and Boston, MA, December 16, 2022** – Maxar Technologies (NYSE:MAXR) (TSX:MAXR) ("Maxar" or the "Company"), provider of comprehensive space solutions and secure, precise, geospatial intelligence, today announced that it has entered into a definitive merger agreement to be acquired by Advent International ("Advent"), one of the largest and most experienced global private equity investors, in an all-cash transaction that values Maxar at an enterprise value of approximately $6.4 billion. Advent is headquartered in the United States and has a demonstrable track record as a responsible owner of defense and security businesses. Following the close of the transaction, Maxar will remain a U.S.-controlled and operated company.
>
> Under the terms of the definitive merger agreement, Advent has agreed to acquire all outstanding shares of Maxar common stock for $53.00 per share in cash. The purchase price represents a premium of approximately 129% over Maxar's closing stock price of $23.10 on December 15, 2022, the last full trading day prior to this announcement, an approximately 135% premium to the 60-day volume-weighted average price prior to this announcement, and a premium of approximately 34% over Maxar's 52-week high.
>
> Following the closing of the transaction, Maxar will benefit from the significant resources, operational expertise and capacity for investment provided by Advent. As a private company, Maxar will be able to accelerate investments in next-generation satellite technologies and data insights that are vital to the Company's government and commercial customers, as well as pursue select, strategic M&A to further enhance the Company's portfolio of solutions. This includes supporting the successful delivery of the new Legion satellite constellation, accelerating the launch of Legion 7 and 8 satellites and further growing the Earth Intelligence and Space Infrastructure businesses through investments in next-generation capabilities, such as advanced machine learning and 3D mapping. With approximately $28 billion invested across the defense, security and cybersecurity sectors in the last three years, Advent's portfolio companies have substantial expertise supporting many satellite and defense platforms which serve the U.S. government and its allies as well as companies across the globe.

5

"This transaction delivers immediate and certain value to our stockholders at a substantial premium," said General Howell M. Estes, III (USAF Retired), Chair of Maxar's Board of Directors. "Maxar's mission has never been more important, and this transaction allows us to maximize value for stockholders while accelerating the Company's ability to deliver its mission-critical technology and solutions to customers over the near and long term."

"Today's announcement is an exceptional outcome for stockholders and is a testament to the hard work and dedication of our team, the value Maxar has created and the reputation we have built in our industry," said Daniel Jablonsky, President and CEO of Maxar. "Advent has a proven record of strengthening its portfolio companies and a desire to support Maxar in advancing our long-term strategic objectives. As a private company, we will have enhanced flexibility and additional resources to build on Maxar's strong foundation, further scale operations and capture the significant opportunities in a rapidly expanding market."

"We have tremendous respect and admiration for Maxar, its industry-leading technology and the vital role it serves in supporting the national security of the United States and its allies around the world," said David Mussafer, Chairman and Managing Partner of Advent. "We will prioritize Maxar's commitment as a core provider to the U.S. defense and intelligence communities, and allies, while providing Maxar with the financial and operational support necessary to apply its technology and team members even more fully to the missions and programs of its government and commercial customers."

"In our view, Maxar is a uniquely positioned and attractive asset in satellite manufacturing and space-based high-resolution imagery, with an incredible workforce and many opportunities ahead," said Shonnel Malani, Managing Director and global head of Advent's aerospace and defense team. "We have strong conviction in the growing need for the differentiated solutions Maxar provides, and our goal is to invest in expanding Maxar's satellite constellation as well as supporting Maxar's team to push the boundaries of innovation, ensuring mission success for its customers."

*The Materially Misleading and/or Incomplete Preliminary Proxy Statement*

30.     On January 31, 2023, the Maxar Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in her capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

31.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Preliminary Proxy Statement fails to disclose:

a. Adequate information as to whether a committee of disinterested directors was formed to evaluate the Proposed Transaction. If so, the identity of the directors who sat on the committee and what powers the committee had. If not, the reasoning for failing to create such a committee;

b. Adequate information as to why the Board failed to conduct a proper market check for potentially interested third parties during the sales process, instead preferring to engage in such a market check during a "go-shop" period after the Proposed Transaction had already been entered into;

c. Adequate information why only two potentially interested counterparties were included in the "go-shop" market check;

d. Whether the confidentiality agreements entered into by the Company with Advent differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

e. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Advent, would fall away; and

7

   f. Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Maxar's Financial Projections*

32. The Preliminary Proxy Statement fails to provide material information concerning financial projections for Maxar provided by Maxar management to the Maxar Board and J.P. Morgan, and relied upon by J.P. Morgan in its analyses. The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

33. Notably the Preliminary Proxy Statement reveals that as part of its analyses, J.P. Morgan reviewed "certain internal financial analyses and forecasts prepared by Maxar's management relating to its business."

34. The Preliminary Proxy Statement therefore should have, but fails to provide, certain information in the projections that Maxar management provided to the Board and J.P. Morgan. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007)

35. With regard to *July 2022 Base Case Forecast* prepared by Maxar, the Preliminary Proxy Statement fails to disclose material line items, including the following:

   a. Adj. EBITDA, including any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: earnings before

8

        interest, taxes, depreciation and amortization, and the specific adjustments made for the following certain items affecting the comparability of Maxar's ongoing operating results:

           i. Restructuring;

          ii. Transaction and integration related expense, including the sub-inputs of:

              1. The specific costs associated with de-leveraging activities, acquisitions and dispositions and the integration of acquisitions;

    b. Unlevered Free Cash Flow.

36. With regard to *October 2022 Satellite Loss Case Forecast* prepared by Maxar, the Preliminary Proxy Statement fails to disclose material line items, including the following:

    a. Adj. EBITDA, including any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: earnings before interest, taxes, depreciation and amortization, and the specific adjustments made for the following certain items affecting the comparability of Maxar's ongoing operating results:

           i. Restructuring;

          ii. Impairments;

         iii. Insurance recoveries;

         iv. Transaction and integration related expense, including the sub-inputs of:

                1. The specific costs associated with de-leveraging activities, acquisitions and dispositions and the integration of acquisitions;

    b. Unlevered Free Cash Flow.

37. With regard to *October 2022 Base Case Forecast* prepared by Maxar, the Preliminary Proxy Statement fails to disclose material line items, including the following:

    a. Adj. EBITDA, including any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: earnings before interest, taxes, depreciation and amortization, and the specific adjustments made for the following certain items affecting the comparability of Maxar's ongoing operating results:

        i. Restructuring;

        ii. Transaction and integration related expense, including the sub-inputs of:

                1. The specific costs associated with de-leveraging activities, acquisitions and dispositions and the integration of acquisitions.

38. With regard to *November 2022 Base Case Forecast* prepared by Maxar, the Preliminary Proxy Statement fails to disclose material line items, including the following:

    a. Adj. EBITDA, including any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: earnings before interest, taxes, depreciation and amortization, and the specific adjustments

10

        made for the following certain items affecting the comparability of Maxar's ongoing operating results:

          i. Restructuring;

         ii. Transaction and integration related expense, including the sub-inputs of:

              1. The specific costs associated with de-leveraging activities, acquisitions and dispositions and the integration of acquisitions;

    b. Unlevered Free Cash Flow.

39. With regard to *October 2022 Satellite Loss Case Forecast* prepared by Maxar, the Preliminary Proxy Statement fails to disclose material line items, including the following:

    a. Adj. EBITDA, including any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: earnings before interest, taxes, depreciation and amortization, and the specific adjustments made for the following certain items affecting the comparability of Maxar's ongoing operating results:

          i. Restructuring;

         ii. Impairments;

        iii. Insurance recoveries;

        iv. Transaction and integration related expense, including the sub-inputs of:

1. The specific costs associated with de-leveraging activities, acquisitions and dispositions and the integration of acquisitions;

   b. Unlevered Free Cash Flow.

40. The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

41. The Preliminary Proxy Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the various sets of projections rely.

42. This information is necessary to provide Plaintiff, in her capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

43. Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the financial analyses created by J.P. Morgan, or make an informed decision whether to vote her shares in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by J.P. Morgan*

44. In the Preliminary Proxy Statement, J.P. Morgan describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for,

underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

45. With respect to the *Selected Transactions Multiple Analysis*, the Preliminary Proxy Statement fails to disclose:

    a. The specific date on which each selected transaction closed;

    b. The specific value of each selected transaction;

    c. The specific multiples calculated for each selected transaction, and the underlying specific inputs, metrics, and assumptions used to calculate these multiples; and

    d. The specific inputs, metrics, and assumptions used to determine the utilized FV/LTM Adj. EBITDA multiple reference range of 9.0x to 13.0x.

46. With respect to the *Public Trading Multiples Analysis*, the Preliminary Proxy Statement fails to disclose:

    a. The specific multiples calculated for each compared company, and the underlying specific inputs, metrics, and assumptions used to calculate these multiples; and

    b. The specific inputs, metrics, and assumptions used to determine the utilized adjusted FV/2023E Adj. EBITDA multiple reference range of 7.7x to 10.9x;

    c. The specific inputs, metrics, and assumptions used to determine Maxar's utilized historical trading discount of 30% relative to the selected companies;

13

        d. The specific inputs, metrics, and assumptions used to determine the utilized unadjusted FV/2023E Adj. EBITDA multiple reference range of 11.0x to 15.5x.

47. With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose:

        a. The terminal values for Maxar calculated;

        b. The specific inputs, metrics, and assumptions used to determine the utilized perpetuity growth rate range of 2.0% to 3.0%;

        c. The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 9.0% to 11.0%;

        d. Maxar's weighted average cost of capital utilized;

        e. Maxar's net debt, adding the present value, as of December 31, 2022;

        f. The specific certain tax credits expected to be utilized by Maxar through fiscal year 2027 and beyond; and

        g. The fully diluted number of shares of Maxar common stock outstanding.

48. With respect to the *Other Information – Analyst Price Targets* section, the Preliminary Proxy Statement fails to disclose:

        a. The specific price targets compared; and

        b. The specific equity research analysts and/or firms which published the utilized price targets.

49. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

50. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinions and the Board's determination that the Proposed Transaction is in her best interests as a public Maxar stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

51. Plaintiff repeats all previous allegations as if set forth in full herein.

52. Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

53. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of her name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

54. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

15

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

55. The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

56. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

57. The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

58. The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to vote her shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

59. Plaintiff repeats all previous allegations as if set forth in full herein.

60. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

61. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

62. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Maxar's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information

17

available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

63. The Individual Defendants acted as controlling persons of Maxar within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Maxar to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Maxar and all of its employees. As alleged above, Maxar is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in her favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to exercise comply with the Exchange Act and disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: February 10, 2022                    **BRODSKY & SMITH, LLC**

                                    By:     */s/ Marc L. Ackerman*
                                            Marc L. Ackerman
                                            Two Bala Plaza, Suite 805
                                            Bala Cynwyd, PA 19004
                                            Phone: (610) 667-6200
                                            Fax:    (610) 667-9029
                                            Email: mackerman@brodskysmith.com

                                            *Counsel for Plaintiff*

**OF COUNSEL**

Douglas Risen
Risen Law, LLC
1900 JFK Blvd., Suite 910
Philadelphia, PA 19103
Phone: 215.201.2824
drisen@comcast.net

19